UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

**LA BELLE DAIRY, LLC,**

    Plaintiff,

v.

**SHARPE HOLDINGS, INC. AND
CHARLES N. SHARPE, Jr. FOUNDATION,**

    Defendants.

Case No.

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff La Belle Dairy, LLC ("La Belle"), for their complaint against defendants Sharpe Holdings, Inc. ("Sharpe Holdings") and Charles N. Sharpe, Jr. Foundation (the "Sharpe Foundation") (collectively "Defendants") alleges as follows:

### PARTIES

1. Plaintiff La Belle Dairy, LLC is a Wisconsin limited liability company with its principal place of business at N3569 Vanden Bosch Road, Kaukauna, Wisconsin, 54130. La Belle's sole member is MS Agricultural Holdings, Inc., which is a Wisconsin corporation with its principal place of business in Wisconsin.

2. Defendant Sharpe Holdings, Inc. is a Missouri corporation with a principal place of business at 6417 Shelby CR 150, Suite A, Bethel, Missouri, 63434-2111.

3. Defendant Charles N. Sharpe, Jr. Foundation is a Missouri foundation with a principal place of business at 500 East 9th Street, Kansas City, Missouri, 64106.

## NATURE OF ACTION

4. This is an action for breach of contract for Defendants' failure to abide by the terms and conditions of a lease and for their hinderance and prevention of La Belle's attempt to perform its duties and exercise its rights with respect to the lease's purchase option in favor of La Belle, which, under the terms of the lease, would have resulted in La Belle's purchase of the leased property but for Defendants' unlawful interference. After unilaterally preventing the sale of the property to La Belle as required by the terms of the lease, Defendants then sought to raise La Belle's rent and to impose new lease conditions in a manner that violated the terms of the lease, upon threat of eviction to La Belle.

5. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). There is diversity of citizenship among the parties, and the amount in controversy exceeds $75,000.

6. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) as Sharpe Holdings and Sharpe Foundation are both residents of Missouri, and Sharpe Holdings resides in this District. Further, the land that is the subject of this action is located in Lewis and Knox Counties, Missouri.

## BACKGROUND

### A.     The 2017 Forage Contract

7. The relationship between La Belle and Sharpe Holding dates back to 2017. In May 2017, La Belle acquired from Sharpe Holdings the Heartland Dairy farm in La Belle, Missouri. Among the agreements entered into by La Belle and Sharpe Holdings at the Heartland Dairy closing was a Forage Contract (the "2017 Forage Contract"). A true and correct copy of the 2017 Forage Contract is attached hereto as **Exhibit A**.

8. The 2017 Forage Contract was for an initial term of 10 years with two successive 10-year automatic renewal terms. The 2017 Forage Contract provided Sharpe Holdings with an

early termination right, exercisable upon at least 365 days advance notice ("Early Termination Notice"). If Sharpe Holdings were to exercise this right of early termination, the 2017 Forage Contract required Sharpe Holdings to enter into a lease with La Belle for at least 6,000 acres of leased property (the "Forage Land") at market rates for the remainder of the Contract, plus any remaining renewal terms. The lease required by the 2017 Forage Contract in the event of early termination is defined in that Contract as the "Forage Land Lease".

9. The 2017 Forage Contract also afforded La Belle a right of first option and right of first refusal to purchase the Forage Land.

10. On or around March 28, 2019, Sharpe Holdings supplied La Belle with an Early Termination Notice, thereby terminating the 2017 Forage Contract and triggering the requirement that Sharpe Holdings enter into a Forage Land Lease with La Belle pursuant to the terms and conditions of the 2017 Forage Contract.

11. La Belle operates a dairy farm adjacent to the property subject to the Forage Land Lease. The dairy farm was previously operated by Sharpe Holdings. The leased property consists of forage land that La Belle needs in order to raise crops to feed its 5,500+ head herd of dairy cattle. The dairy cattle produce milk which La Belle sells to its customers.  The leased property is also utilized by La Belle for land application of manure nutrients in accordance with its legally required nutrient management plan. Given the regulatory requirements attendant to the land application of manure, the land subject to the Forage Land Lease is unique and irreplaceable.

12. The provisions permitting La Belle to acquire, and/or continue the lease of the Forage Land were included in the Forage Land Lease due to the significance of the land to La Belle's business operations and the irreparable harm to La Belle that would result from a loss of control over the property subject to the Forage Land Lease. Without the leased land, La Belle would be unable to meet the feed requirements of its dairy herd, and its ability to apply properly

discharge manure nutrients pursuant to its nutrient management plan would be compromised, potentially leading to an environmental hazard.

### B. The Forage Land Lease

13. In or around September 2019, discussions between the Parties regarding the Forage Land Lease ensued. Those discussions continued for several months.

14. On or around January 21, 2020, La Belle provided Defendants with a draft of the proposed Forage Land Lease.

15. On or around February 21, 2020, as part of the ongoing discussions concerning the draft Forage Land Lease, Defendants proposed to La Belle terms for La Belle's purchase of the land subject to the Forage Land Lease. Defendants suggested a five-year plan through which La Belle would purchase all of the leased land in a series of transactions that were to be executed annually. This arrangement contemplated that the parcels to be sold to La Belle would be divided into five segments, to be purchased by La Belle each at fair market value until all of the land was sold to La Belle.

16. At the same time, Defendants also proposed that the parties negotiate the fair market price of a given year's transaction during the calendar year of or immediately preceding the sale, and resort to dueling appraisers in the event the Parties could not reach agreement on price. The Parties ultimately included Defendants' proposed terms for La Belle's purchase option in Section 6.01 of the Forage Land Lease, as amended in the First Amendment (discussed below).

17. On April 30, 2020, La Belle, as Tenant, and Sharpe Holdings, as Landlord, executed the Forage Land Lease with an Effective Date of January 1, 2020. A true and correct copy of the Forage Land Lease is attached hereto as **Exhibit B**.

18. On information and belief, Sharpe Foundation is Sharpe Holdings' successor in interest to the Forage Land Lease, and currently holds title to the land subject to the Forage Land

Lease. La Belle understands that sometime after the Lease was executed in January 2020, ownership of the land subject to the Forage Land Lease was transferred from Sharpe Holdings to Sharpe Foundation, and that Sharpe Foundation was then to be the seller of the land pursuant to the purchase agreement contained in Section 6.01 of the Forage Land Lease.

19. Subject to the provisions of the Forage Land Lease, Defendants leased to La Belle, and La Belle rented from Defendants the Forage Land, which consists of approximately 6,100 acres of tillable farmland in Lewis and Knox Counties, Missouri. Ex. B, § 1.01.

20. The Forage Land Lease provides for three consecutive five-year terms (together the "Lease Term"). Ex. B, § 1.02. Upon expiration of the Initial Term, the Lease renews automatically for up to two additional five-year terms (each a "Renewal Term"), unless terminated earlier in accordance with Article XI of the Lease. *Id*.

21. As of the filing of this Complaint, the Forage Land Lease is still in its Initial Term, which shall end at 11:59 p.m. on January 31, 2025. *Id*.

    **C.**    **Article VI – "Sale of Leased Premises" – and the Parties' Execution of the 2021 Purchase Agreement for the Year 1 Land**

22. The Forage Land Lease included a requirement that Defendants and La Belle enter into a purchase agreement (the "2020 Purchase Agreement") pursuant to which La Belle must purchase, and Defendants must sell, all of the leased premises under the Forage Land Lease, plus additional non-tillable land included in the legal descriptions of the parcels. Ex. B, § 6.01. The Forage Land Lease initially required the 2020 Purchase Agreement to be executed by October 1, 2020. *Id*. The Forage Land Lease further provided that until the 2020 Purchase Agreement was signed, the provisions of the ROFR from the 2017 Forage Contract were incorporated into the Forage Land Lease and would apply. *Id*. at § 6.02.

23. On or around August 19, 2020, Defendants advised La Belle that Defendants had not completed but were continuing to work on obtaining legal descriptions of the parcels subject

to the Forage Land Lease. Defendants further advised that they were working on a transfer of ownership of the land to Sharpe Foundation, one of Sharpe Holdings' charities, as a charitable donation with a stepped-up basis in the land for tax purposes. Because of this, Defendants indicated they would be unable to sign the 2020 Purchase Agreement by October 1, 2020, the date called for in the Forage Land Lease.

24.     Time was not of the essence as to the execution of the Purchase Agreement.

25.     The next day, August 20, 2020, Defendants forwarded to La Belle maps showing proposed fields / parcels divided up for the series of sales contemplated by the Parties' five-year purchase plan.

26.     On or around September 18, 2020, La Belle provided Defendants with a draft proposed amendment to the Forage Land Lease. The scope of the proposed amendment was limited to Article VI of the Forage Land Lease – Sale of Leased Premises – and proposed substantive changes only to Section 6.01. The proposed amendment extended the execution date of the 2020 Purchase Agreement to June 1, 2021 (now defined as the "2021 Purchase Agreement"), but again, the parties did not make time of the essence to the purchase of the property. Further, it provided that the price term for the sale / purchase of the land required the Parties reach agreement on fair market value. If the Parties could not agree on the fair market value of any of the parcels to be sold under the 2021 Purchase Agreement, the Parties would then retain an appraiser to establish the fair market value.

27.     La Belle and Defendants then executed a valid writing amending the Forage Land Lease in accordance with the above terms with an Effective Date of September 30, 2020. A true and correct copy of the First Amendment to Forage Land Lease ("First Amendment") is attached hereto as **Exhibit C**. Other than the changes to Article VI, all other terms and conditions were left unmodified, to continue in full force and effect. Ex. C, ¶ 3.

28. It was the understanding and intent of the Parties at the time they executed the Forage Land Lease that La Belle would purchase, and Defendants would sell, all of the land that was subject to the Forage Land Lease (plus the additional non-tillable land included in the leased parcels). *See supra*; Exhs. B and C, Art. VI.

29. The scope of the First Amendment was limited to modification of Article VI of the Forage Land Lease, which concerned the sale of the leased premises to La Belle. *See* Ex. C. The new Section 6.01 modified the contemplated Purchase Agreement execution date and added terms to La Belle's purchase option for the leased premises. The modified purchase option reads:

> 6.01. Not later than [June 1, 2021], Landlord and Tenant shall enter into a separate agreement that will provide terms upon which Tenant shall purchase from Landlord, and Landlord shall sell to Tenant, free and clear of all liens and encumbrances, the Leased Premises and all additional acreage surrounding the Leased Premises, consistent with existing parcel legal descriptions and/or tax parcel descriptions, at fair market value over the course of up to five years from the Commencement Date of this Lease (the **"2021 Purchase Agreement"**). The Parties acknowledge that the Leased Premises are part of larger parcels that in certain instances include wooded areas, marshy areas, and otherwise untillable land, and that the 2021 Purchase Agreement will contemplate the sale of all such acreage, not just the Leased Premises. [The purchase price shall be negotiated between Landlord and Tenant to reflect fair market value at the time of closing, and if Landlord and Tenant are unable to agree on the fair market value of any parcels of real estate and/or any improvements to be sold under the 2021 Purchase Agreement, then Landlord and Tenant agree to obtain a third party appraiser to establish fair market value. The obligations of the Parties under this Article VI and under the 2021 Purchase Agreement shall be binding on their respective successors and assigns.]

30. The brackets above denote the language added to this Section in the First Amendment that is different from the previous iteration of this section contained in the Forage Land Lease. *Compare* Ex. B, § 6.01 *with* Ex. C, § 6.01.

31. Accordingly, the modified version of Section 6.01 accomplished three things. *See* Ex. C, § 6.01.

   a. First, it extended the execution date for the Purchase Agreement from October 1, 2020

to June 1, 2021. *Compare* Ex. B, § 6.01 *with* Ex. C, § 6.01. This was the main reason the Parties executed the First Amendment: Defendants required more time. Indeed, on numerous occasions Defendants told La Belle that they were not in any hurry to sell.

    b. Second, the modified version of Section 6.01 included a price term for the purchase option of the leased premises:

> The purchase price shall be negotiated between Landlord and Tenant to reflect fair market value at the time of closing, and if Landlord and Tenant are unable to agree on the fair market value of any parcels of real estate and/or any improvements to be sold under the 2021 Purchase Agreement, then Landlord and Tenant agree to obtain a third party appraiser to establish fair market value. Ex. C, § 6.01.

    c. Third, the last sentence in the modified Section 6.01 made the obligations of the Parties under the 2021 Purchase Agreement binding on their respective successors and assigns. Ex. C, § 6.01

32. The parties executed the First Amendment and extended the date for execution of the Purchase Agreement based on concerns Defendants raised with respect to the sale of the land. Defendants purported to need additional time to address issues involved in transferring the land to Sharpe Foundation and to work on surveys for the contemplated land transfers.

33. The purchase option contained at Section 6.01 of the Forage Land Lease provides that the sale of the land was to occur over the course of up to five years from the Commencement Date of the Lease. Ex. C, § 6.01. In accordance with this language, it was the intent of the Parties to complete the sale through a series of transactions: up to five annual purchases of roughly equal acreage each year, at a price to be determined by the fair market value at the time of purchase. The parties discussed the particulars of the five transactions, broke down the transactions by parcels to be sold, and referred to them by year: the Year 1, Year 2, Year 3, Year 4, and Year 5 purchases.

34. Negotiations concerning the Year 1 land began in January 2021.

35. In February 2021, Defendants provided La Belle with a formal proposal for the land to be included in the Year 1 purchase. In response, La Belle began an analysis of an appropriate purchase price for the Year 1 land.

36. In March 2021, La Belle proposed to Defendants a purchase price for the Year 1 land. Negotiations ensued.

37. On June 1, 2021, the date identified in the Forage Land Lease (as amended) as the deadline for execution of the 2021 Purchase Agreement, representatives of La Belle flew to La Belle, Missouri to meet with representatives of Defendants to discuss further, and to hopefully reach agreement on, the price of the Year 1 land. At that meeting, Defendants indicated they had been contacted by several other potential purchasers who were willing to purchase all of the land subject to the Forage Land Lease. Given the disagreement over price, and because it was the date identified in the Lease by which the 2021 Purchase Agreement was to be executed, La Belle suggested to Defendants that the Parties agree to a reasonable extension of time to execute the 2021 Purchase Agreement.

38. The Parties continued to negotiate the purchase price for the Year 1 land after the June 1, 2021 meeting in La Belle, Missouri.

39. On or around October 28, 2021, having not yet reached agreement on the price of the Year 1 land, La Belle provided Defendants with a proposed purchase agreement for the Year 1 land, signed by La Belle, for countersignature. Further negotiations followed.

40. On or around November 12, 2021, La Belle provided Defendants with an updated purchase agreement for the Year 1 land. Additional discussions followed.

41. Finally, on November 18, 2021, La Belle and Defendants executed the 2021 Purchase Agreement for the first of the contemplated transactions, the purchase of the Year 1 land. A true and correct copy of the Year 1 Purchase Agreement, and First Amendment to the Year 1 Purchase

Agreement, is attached hereto as **Exhibit D**. The Parties agreed that the 2021 Purchase Agreement for the Year 1 land would serve as the form of purchase agreement for the remaining transactions, with only the fair market value of the subsequent transactions to be determined in accordance with Section 6.01. The idea being that because a year or so would elapse before the next transaction, fair market value would likely change, and therefore the Parties would utilize the 2021 form agreement for the remaining transactions, replacing only the new price term once the price was determined in accordance with Section 6.01.

42. Upon executing the 2021 Purchase Agreement for the Year 1 land, the Parties scheduled closing for January 14, 2022, which could be extended by La Belle to April 30, 2022. La Belle did extend closing to April 30, 2022. The Parties ultimately closed on the Year 1 land on May 19, 2022 after agreeing to another extension.

**D.     The Parties' Negotiations of the Year 2 Purchase and Defendants' Breach of Art. VI**

43. In January 2022, Defendants initiated with La Belle further discussions regarding the purchases for Years 2-5.

44. In early March 2022, the Parties agreed to close on the sale of the Year 2 parcels in January of 2023. At that time, Defendants once again indicated they were pursuing a transfer of the land to Sharpe Foundation, would need time to accomplish that transfer, and accordingly could not execute the Year 2 purchase until such time as the transfer was complete. In response, La Belle agreed to withhold circulation of the Year 2 purchase agreement until it received word from Defendants that they were ready to proceed.

45. La Belle understands that ownership of the land subject to the Forage Land Lease was in fact transferred from Sharpe Holdings to Sharpe Foundation at some time during the initial term of the Forage Land Lease, and that Sharpe Foundation was to be the seller of the land pursuant to the purchase agreement contained in Section 6.01 of the Forage Land Lease.

46. In July 2022, La Belle asked that the Forage Land Lease be updated so that it would be between La Belle and Sharpe Foundation, the current owner and landlord. Representatives of both Sharpe Holdings and Foundation indicated they were willing to amend the Forage Land Lease to identify the Foundation as the landlord.

47. By September 2022, the Parties finalized identification of the parcels to be included in the Year 2 purchase. Negotiations of purchase price followed. Closing was set for January 13, 2023.

48. As of November 2022, the Parties had failed to reach agreement on purchase price. La Belle reached out to Defendants to affirm its commitment to work with Defendants to identify a qualified independent appraiser, consistent with the Parties' obligations under Section 6.01 of the Forage Land Lease. La Belle also generally reaffirmed its commitment to purchase the Year 2 land as soon as the Parties had an agreed price.

49. Thereafter Defendants ceased communicating with La Belle for several months. In or around April of 2023, Defendants resumed communications and once again indicated their intention to proceed with the Year 2 and subsequent sales in accordance with Article VI of the Forage Land Lease. Defendants also indicated at that time that they believed appraisal would be necessary to reach an agreement on the purchase price, and that they were not in any hurry to close.

50. In October 2023, Defendants informed La Belle that they had received an offer from the Mormon Church for the land subject to the Forage Land Lease, and that the Mormon Church's offer was better than La Belle's. Defendants forwarded to La Belle the terms of the offer from Farmland Reserve Inc. to purchase the Forage Land Lease land, which is the party that Defendants had originally referred to as the Mormon Church.

51. On or around November 3, 2023, La Belle provided Defendants with an updated proposal to purchase the Year 2 land at a price the was generally consistent with the offer from

Farmland Reserve, Inc., or, alternatively, at a price to be determined through appraisal pursuant to Section 6.01.

52. On or around November 15, 2023, Defendants informed La Belle that, while they appreciated La Belle bridging the gap on price in its most recent proposal, the Sharpe Foundation had decided not to sell the Year 2 land, or any of the other agreed upon land, to La Belle. In other words, Defendants announced their intent to breach the Forage Land Lease.

53. Despite demand, to date, Defendants have refused to sell the Year 2 land or any of the other land in accordance with the terms of the Forage Land Lease.

### E. Defendants' Breach of Article II - Rent

54. After breaching Article VI of the Lease by refusing to sell the balance of the agreed upon land to La Belle, Defendants then sought to leverage that breach by exacting from La Belle significantly increased rent in violation of Article II.

55. Article II sets forth the provision applicable to rent. During the Initial Term, La Belle was required to pay Sharpe Holdings base rent at the rate of $185 per tillable acre for a total annual rent payment of $1,128,500.00, payable in equal monthly installments of $94,041.67. Ex. B, § 2.01. As of the date of the filing of this Complaint, the Forage Land Lease remains in its Initial Term.

56. La Belle has timely made all rent payments required of it under the Forage Land Lease.

57. At the commencement of each Renewal Term, the Forage Land Lease requires that rent be reset to the prevailing market rate. Ex. B, § 2.01. Together, Defendants and La Belle must establish the new market rate Rent for each Renewal Term, at least four months prior to the end of the then current term, and must then execute a signed, written addendum to the Forage Land Lease

setting forth the new Rent for each Renewal Term. *Id*. If Sharpe Holdings and La Belle are unable to agree on the new market rate Rent for a Renewal Term, then the parties must obtain a third-party appraiser to establish the new market Rent for the Renewal Term. *Id*.

58. After refusing to sell La Belle the land in accordance with Article VI, Defendants proposed replacing the Forage Land Lease with a new cash rent proposal going forward. The proposal would have begun in 2024 at $295 per acre, even though the Forage Land Lease currently only contemplates a rent payment of $185 per acre for 2024. Defendants' proposal also added real estate taxes to the rent and sought to apply an annual rent increase of 3.7 percent. The new lease proposal would be for a three-year term and would renew for three three-year cycles. No purchase rights were included in the proposal.

59. La Belle rejected Defendants' rent proposal and new lease conditions. La Belle has a binding Forage Land Lease with Defendants, with a Lease Term through January 31, 2035, that sets forth the manner in which rent shall be calculated and paid. Defendants' proposal is in violation of the terms and conditions of the Forage Land Lease, including with respect to rent.

60. The Parties have not reached agreement on rent for the first Renewal Term, and Defendants refuse to engage an appraiser as required by the Forage Land Lease. On January 17, 2025, Defendants threatened to lease the land to someone else if La Belle will not agree to their extra-contractual, increased rent demands.

## CAUSES OF ACTION

### COUNT I – BREACHES OF CONTRACT

61. The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

62. Defendants have breached their obligations under Article VI of the Forage Land Lease, which require Defendants to sell the leased land and surrounding areas to La Belle. The

Parties reached agreement and executed a 2021 Purchase Agreement conveying the Year 1 land to La Belle. La Belle made numerous attempts to reach agreement on price and, when those attempts faltered, to work with Defendants to engage an appraiser on the remaining parcels. But, despite La Belle's efforts, Defendants have unilaterally prevented the sale of the remaining land to La Belle.

63. Defendants' breach of Article VI has damaged La Belle, including the amounts La Belle paid in rent after such time as the sale of the land to La Belle should have been completed, as well as damages resulting from deferral of the sale of the land while real estate values continued to appreciate.

64. La Belle is also entitled to specific performance of Article VI of the Forage Land Lease.

65. Defendants breached Article II of the Forage Land Lease concerning rent. Defendants have unilaterally imposed increased and exorbitant rent on La Belle in a manner inconsistent with Article II of the Forage Land Lease. Defendants breach of Article II has damaged and threatens to continue to damage La Belle because the rent demanded by Defendants is higher than that required by the Forage Land Lease.

## COUNT II – DECLARATORY JUDGMENT

66. The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

67. The Forage Land Lease remains valid and binding on the Parties, including with respect to the sale of the leased premises, Article VI, and rent, Article II.

68. Defendants are required under the Forage Land Lease to convey to La Belle the land for Years 2-5 at fair market value. And if the Parties cannot reach agreement on a fair market price, then the Parties must obtain a third-party appraiser to set the price. Ex. C, § 6.01.

69. Defendants have failed and refused to convey the land to La Belle in accordance with the terms of Article IV of the Forage Land Lease.

70. The parties have been unable to reach agreement on rent for the Renewal Term set to commence February 1, 2025.

71. In the event the Parties are unable to reach agreement on rent for any Renewal Term, Section 2.01 of Article II of the Lease requires the Parties to obtain a third-party appraiser to establish the new market rent for the Renewal Term.

72. Defendants have refused to obtain a third-party appraiser and are attempting to force La Belle to pay increased rent in a manner otherwise inconsistent with Article II of the Forage Land Lease.

73. This controversy is ripe for determination because the Renewal Term is about to commence and Defendants have threatened to lease or sell the Forage Land to someone else if La Belle does not acquiesce to their rent demands and new lease conditions, with the implicit threat that Defendants would then evict La Belle from the land subject to the Forage Land Lease. This controversy if ripe for the additional reason that Defendants have refuse to convey the land in accordance with the Forage Land Lease.

74. La Belle has a legally protectible interest as Tenant under the Lease. Further, La Belle is currently farming the land, not only growing crops for feed for its dairy herd, but also utilizing it for land application of manure nutrient fertilizer, thereby allowing La Belle to properly maintain its manure lagoon storage facilities at its dairy site without potentially causing an environmental hazard. Defendants' actions therefore not only pose the threat of monetary damages because of the increased rent, but also a threat to its very livelihood that is incalculable and significant should Defendants carry out their threat to force La Belle off the land.

75. A justiciable controversy therefore exists between La Belle, on one hand, and Defendants, on the other, over: (1) whether the Forage Land Lease is valid and binding on the Parties; (2) whether Defendant must convey the land to La Belle in accordance with the terms of

the Forage Land Lease; (3) whether Defendant has the right to unilaterally impose new rent and lease conditions inconsistent with the terms and conditions of the Forage Land Lease; and (4) whether Defendants' conduct with respect to the sale of the land and rent constitutes breaches of the Forage Land Lease.

76. Accordingly, La Belle seeks a declaratory judgment that (1) the Forage Land Lease is valid and binding on the Parties; (2) Defendants may not convey or lease the land subject to the Forage Land Lease to any third party, and rather must continue to lease and ultimately sell the land to La Belle in accordance with the terms of the Forage Land Lease; (3) Defendants must utilize the appraisal mechanism contained in Article VI to set the rent for the Renewal Term and also to set the price of purchase for the remaining parcels to be sold to La Belle; (4) Defendants have materially breached the Forage Land Lease for the reasons set forth above.

## COUNT III – INJUNCTIVE RELIEF

77. The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

78. La Belle will prevail on the merits of this controversy.

79. If not enjoined, Defendants' threat to lease the property subject to the Forage Land Lease to other persons will cause La Belle irreparable harm.

80. Defendants' conduct is wrongful and in breach of duties owed to La Belle.

81. La Belle is entitled to preliminary and permanent injunctions prohibiting Defendants from leasing or selling the property subject to the Forage Land Lease to other persons.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff La Belle Dairy, Inc. demands that judgment be entered in their favor and against Defendants Sharpe Holdings, Inc. and Charles N. Sharpe, Jr. Foundation as follows:

  A.  On Count I, an amount to be proved at trial and reasonably anticipated to exceed $75,000;

  B.  On Count I, an order of specific performance compelling Defendants to honor the terms of the Forage Land Lease;

  C.  On Count II, a declaration that: (1) the Forage Land Lease is valid and binding on the Parties; (2) Defendants may not convey or lease the land that is subject to the Forage Land Lease to any third party, and rather must sell the land to La Belle in accordance with the terms of the Forage Land Lease; (3) Defendants must utilize the appraisal mechanism contained in Articles II and VI to set the rent for the Renewal Term and also to set the price of purchase for the remaining parcels to be sold to La Belle; (4) Defendants have materially breached the Forage Land Lease for the reasons set forth above;

  D.  On Count III, preliminary and permanent injunctions enjoining Defendants from leasing or selling the property subject to the Forage Land Lease to other persons;

  E.  Prejudgment interest and all recoverable costs, including attorneys' fees; and

  F.  An award of such other and further relief as the Court may deem appropriate.

## JURY DEMAND

Plaintiff La Belle Dairy, Inc. hereby demands a jury trial of all issues of fact not admitted by the Defendant.

Dated: January 24, 2025						Respectfully submitted,


                By: */s/ Jeffrey L. Schultz*
                 Jeffrey L. Schultz (56553MO)
                 ARMSTRONG TEADALE LLP
                 7700 Forsyth Blvd., Suite 1800
                 St. Louis MO 63105
                 (314) 621-5070 (telephone)
                 (314) 621-5065 (fax)
                 jschultz@atllp.com

                 Ian Pitz (pro hac vice forthcoming)
                 David Shea (pro hac vice forthcoming)
                 MICHAEL VEST & FRIEDRICH LLP
                 One South Pinckney Street, Ste. 700
                 Madison, WIL 53703
                 608.257.3501 (telephone)
                 608.283.2275 (fax)
                 iapitz@michaelbest.com
                 dnshea@michaelbest.com

                ATTORNEYS FOR PLAINTIFF