UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| LA BELLE DAIRY, LLC, | ) |
| Plaintiff, | ) |
| v. | ) No. 2:25-CV-14 HEA |
| SHARPE HOLDINGS, INC., et al., | ) |
| Defendants. | ) |

### ORDER GRANTING TEMPORARY RESTRAINING ORDER

This matter is before the Court on Plaintiff La Belle Dairy LLC's ("La Belle") Motion for Temporary Restraining Order and Preliminary Injunction against Defendants Sharpe Holdings, Inc. ("Sharpe Holdings") and Charles N. Sharpe, Jr. Foundation (the "Sharpe Foundation") (collectively "Defendants"). (ECF No. 7). La Belle seeks an injunction prohibiting Defendants from evicting La Belle from 4,890 acres of land in Lewis and Knox Counties owned by Defendants and leased to La Belle under a lease agreement as amended and executed by the parties in 2020. Defendants have filed opposition to the Motion.

On March 24, 2025, the undersigned held a hearing and heard oral argument on La Belle's Motion for Temporary Restraining Order. After considering the parties' arguments and reviewing the Complaint and attachments thereto, the Motion for Temporary Restraining Order and its supporting memorandum and

exhibits, Defendants' Response in Opposition to the Motion to Temporary Restraining Order and the exhibits attached thereto, the Declarations of Ian A.J. Pitz and Deric DuQuaine, which were filed on the morning of the hearing, and the arguments in Defendants' Motion to Dismiss, the Court finds that the entry of temporary restraining order preventing eviction of La Belle from the leased land is necessary and proper in this case. The Court grants La Belle's Motion for Temporary Restraining Order against Defendants Sharpe Holdings and the Sharpe Foundation.

## *Background*

La Belle presented evidence, by way of declarations and exhibits, that La Belle owns a dairy operation in La Belle, Missouri. To operate its dairy, La Belle currently leases 4,890 acres of land owned by Defendants that is adjacent to La Belle's dairy. The leased land is used to raise crops to feed La Belle's 6,000 head of dairy cattle. It is also used for land application of manure in accordance with La Belle's government-approved nutrient management plan.

On April 30, 2020, La Belle and Sharpe Holdings entered into a Forage Land Lease with an effective date of January 1, 2020. Defendants leased to La Belle, and La Belle rented from Defendants land that consisted of approximately 6,100 acres of tillable farmland in Lewis and Knox Counties, Missouri. The Forage Land Lease provides for three consecutive five-year terms, with an initial term and two consecutive 5-year renewal terms. The initial term, which ended on January

2

31, 2025, provided that La Belle would pay rent at $185 per tillable acre for a total annual rent payment of $1,128,500.00, that was payable to Defendants in monthly amounts of $94,041.67. (ECF No. 1, Ex. B at 2). Article II of Forage Land Lease provides the following method by which rents would be determined for the two renewable terms:

> Landlord and Tenant shall establish the new market rate Rent for each Renewal Term at least four (4) months prior to the end of the then current Renewal Term, and shall execute a signed, written addendum to this lease setting forth the new Rent for each Renewal Term. If the Landlord and Tenant are unable to agree on the new market rate Rent for a Renewal term, then Landlord and Tenant agree to obtain a third-party appraiser to establish the new market rate Rent for the particular Renewal Term.

(*Id.*)

The Forage Land Lease also has a provision, Article VI, regarding the sale of the leased premises, which provides that La Belle must purchase, and Defendants must sell, *all* of the leased premises under the Forage Land Lease, plus *all* additional attached acreage surrounding the lease premises, which included non-tillable land. (*Id.* at 4). The Forage Land Lease initially required a purchase agreement to be executed by October 1, 2020.[1] *Id.*

---

[1] The parties had entered into a prior contract in 2017 (the "2017 Forage Contract") that afforded La Belle a right of first refusal to purchase the 6,100 acres of land. The 2017 Forage Contract was terminated by Sharpe Holdings, and the parties entered into the Forage Land Lease. The Forage Land Lease provides in Article VI that until the 2020 Purchase Agreement is executed, the provisions of the right of first refusal from the 2017 Forage Contact are incorporated into and are part of the Forage Land Lease. (ECF No. 1, Ex. B at 4).

3

La Belle and Defendants executed a First Amendment to Forage Land Lease ("First Amendment"), with an effective date of September 20, 2020. The scope of the First Amendment is limited to modification of Article VI of the Forage Land Lease, which concerns the sale of the leased premises and provides as follows:

> 6.01. Not later than June 1, 2021, Landlord and Tenant shall enter into a separate agreement that will provide terms upon which Tenant shall purchase from Landlord, and Landlord shall sell to Tenant, free and clear of all liens and encumbrances, the Leased Premises and all additional acreage surrounding the Leased Premises, consistent with existing parcel legal descriptions and/or tax parcel descriptions, at fair market value over the course of up to five years from the Commencement Date of this Lease (the "2021 Purchase Agreement"). The Parties acknowledge that the Leased Premises are part of larger parcels that in certain instances include wooded areas, marshy areas, and otherwise untillable land, and that the 2021 Purchase Agreement will contemplate the sale of all such acreage, not just the Leased Premises. The purchase price shall be negotiated between Landlord and Tenant to reflect fair market value at the time of closing, and if Landlord and Tenant are unable to agree on the fair market value of any parcels of real estate and/or any improvements to be sold under the 2021 Purchase Agreement, then Landlord and Tenant agree to obtain a third-party appraiser to establish fair market value. The obligations of the Parties under this Article VI and under the 2021 Purchase Agreement shall be binding on their respective successors and assigns.
>
> 6.02 Until Landlord and Tenant execute the 2021 Purchase Agreement, Landlord and Tenant agree that the provisions of the Right of First Refusal paragraph set forth in the Forage Contract entered into between Landlord and Tenant on May 24, 2017 (and attached as Schedule 6.02) are hereby incorporated into and made a part of this Lease.

(ECF No. 1, Ex. C at 1).

La Belle contends and has presented evidence that it was the intent of the parties to complete the sale of the leased premises through a series of transactions: up to five annual purchases of roughly equal acreage each year, at a price to be determined by the fair market value at the time of purchase. According to the Complaint and a declaration executed by general counsel of La Belle's parent corporation, Deric DuQuaine, the parties discussed the particulars of the five transactions, broke down the transactions by parcels to be sold, and referred to them by year: the Year 1, Year 2, Year 3, Year 4, and Year 5 purchases. (ECF No. 7, Ex. 1 at 5).

There is evidence that negotiations concerning Year 1 began in January 2021, and La Belle made a formal proposal for the land purchase.  From the record, it is clear that there were some disagreements, and the parties agreed to continue to negotiate after June 1, 2021.  Finally, on November 18, 2021, La Belle and Defendants executed the 2021 Purchase Agreement for the purchase of the Year 1 land, which was approximately 1210 acres, and the parties closed on May 1, 2022.  According to La Belle, the parties agreed to extensions for the purchase agreement and closing.  (*Id.*)

According to allegations in the Complaint and Mr. DuQuaine's declaration, in January 2022, the parties had further discussions regarding the purchases for Years 2-5, but again there were a number of delays. (*Id.*) There is evidence that there was a proposed schedule to execute the Year 2 purchase agreement by

5

October 1, 2022, with a closing date in December 2022 or January 2023. (*Id.* at 6). There were negotiations regarding price in September and October 2022, but the parties were unable to reach an agreement. On November 21, 2022, Mr. DuQuaine sent Defendants an email offering to work with Defendants to identify a third-party appraiser under Article VI.   The email went unanswered, and on April 4, 2023, La Belle sent Defendants written notice of default for their failure to comply with Article VI.  (*Id.* and ECF No. 31 at 2).

On or around November 15, 2023, Defendants informed La Belle that the Sharpe Foundation had decided not to sell the Year 2 land, or any other land, to La Belle. There is evidence that on February 23, 2024, La Belle sent Defendants a second written notice of default for their failure to comply with Article VI.  (*Id.*)

There is evidence in the record that after refusing to sell La Belle the land as provided for by Article VI of the Forage Land Lease, Defendants proposed replacing the Forage Land Lease with a new cash rent proposal going forward. (ECF No. 7, Ex. 1 at 7). The proposal would have begun in 2024 at $295 per acre, a significant increase in rent, as the Forage Land Lease only contemplated a rent payment of $185 per acre for 2024. The new lease proposal would be for a three-year term and would renew for three three-year cycles. No purchase rights were included in the proposal.  (*Id.*)

The parties did not reach an agreement as to a new cash rent proposal, and there is also evidence that the parties did not reach agreement as to the amount of

6

rent for the first renewal term under the Forage Land Lease. (*Id.*) According to La Belle, Defendants refused to engage an appraiser as required by the Forage Land Lease. La Belle presented evidence that on January 17, 2025, Defendants threatened to lease the land to someone else if La Belle did not agree to their extra-contractual and increased rent demands.  La Belle refused to sign Defendants' proposed addendum to the Forage Land Lease, which struck La Belle's purchase rights and set the rent at Defendants' preferred rate. (*Id.*)

In its Complaint, which was filed on January 24, 2025, La Belle alleges Defendants have breached two articles of the Forage Land Lease.  It alleges that Defendants have breached their obligations under Article VI of the Forage Land Lease in that after selling one of the parcels, Defendants have "unilaterally prevented the sale of the remaining land to La Belle."  (ECF No. 1 at 14, ¶ 62).  La Belle also alleges that Defendants breached Article II of the Forage Land Lease because they have "unilaterally imposed increased and exorbitant rent on La Belle in a manner inconsistent with Article II of the Forage Land Lease." (*Id.* at ¶ 65). More specifically, La Belle alleges that Defendants have refused to engage a third-party appraiser to determine the amount of the rent for the first renewal term of the Forage Land Lease, and instead Defendants have demanded that La Belle sign an addendum to the Forage Land Lease which is in breach of Article II because the rent demanded by Defendants is higher than that required by the Forage Land Lease.

7

On January 29, 2025, Defendants sent La Belle notice of default of the Forage Land Lease. (ECF No. 7, Ex 2). Defendants asserted that in September 2024, the parties had reached an agreement as to the terms of the addendum with a new rent rate of $290.00 per tillable acre, and La Belle refused to execute the written addendum in violation of Article II of the Forage Land Lease. (*Id.*) La Belle responded that Defendant's proposed addendum contained extra-contractual provisions that La Belle was under no legal obligation to accept and that compromised its interests. (ECF No. 7, Ex 3). La Belle stated that it was willing to sign a "clean addendum" that changes only the amount of rent for the renewal term to an amount consistent with the fair market value, as determined in accordance with the Forage Land Lease. (*Id*. at 3). La Belle further stated that it would make payments of rent in the amount of $290 per acre, pending appraisal of the property's fair market value in accord with the dispute resolution provisions of the Forage Land Lease. (*Id.*)

On March 4, 2025, Defendants notified La Belle that it continued to be in breach of the Forage Land Lease, and because La Belle had not signed the Defendant's written addendum setting, among other things, the new rate for rent for the renewal term, La Belle had not cured its breach. (ECF No. 7, Ex 4). Defendants stated that pursuant to Article XI of Forage Land Lease, it was terminating the lease, and they demanded that La Belle vacate the leased premises within 30 days. (ECF No. 7, Ex 4 at 3). Defendants further stated that if La Belle

8

did not vacate within 30 days, Defendants would pursue eviction proceedings. (*Id.*)

It appears to be undisputed that La Belle has timely made all rent payments required of it during the initial term if the Forage Land Lease, and following the initial term, it has paid Defendants rent at the raised amount of $290 per tillable acre.

According to a declaration executed by Mr. DuQuaine, without the leased acres, La Belle would be unable to meet the feed requirements of its dairy herd and its ability to apply manure pursuant to its federally required nutrient management plan would be compromised, leading to the risk of a significant environmental hazard.  (ECF No. 7, Ex 1). Mr. DuQuaine further attests that without the leased land, La Belle would be unable to satisfy its obligation to its customers and affiliates, as well as its legal obligations to regulatory agencies, resulting in loss to La Belle's reputation and goodwill.  (*Id.*)

### *Temporary Restraining Order Standard*

In determining whether to issue a temporary restraining order, the Court must consider four factors: (1) the likelihood the moving party will succeed on the merits, (2) the threat of irreparable harm to the moving party; (3) the balance between this harm and the injury that granting the injunction will inflict on other parties; and (4) the public interest. *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013); *see also Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir.

9

1981) (en banc)). The inquiry is "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the *status quo* until the merits are determined." *Dataphase Systems, Inc.*, 640 F.2d at 113.

The likelihood of success is the most important factor. *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 706 (8th Cir. 2011). This factor directs courts to ask whether the party requesting a preliminary injunction has a "fair chance of prevailing." *Planned Parenthood Minnesota, N. Dakota, S. Dakota v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) (en banc). Even when a plaintiff has a strong claim on the merits, however, "[f]ailure to demonstrate irreparable harm is a sufficient ground to deny a preliminary injunction." *Phyllis Schlafly Revocable Tr. v. Cori*, 924 F.3d 1004, 1009 (8th Cir. 2019) (quoted case omitted). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). The moving party bears the burden to establish the need for injunctive relief. *Chlorine Inst., Inc. v. Soo Line R.R.*, 792 F.3d 903, 914 (8th Cir. 2015).

## *Discussion*

In its motion, La Belle asks the Court to enjoin Defendants from taking any action to evict or otherwise interfere with La Belle's possession of the 4,890 acres of land that are the leased premises under the Forage Land Lease. The Court will first address La Belle's likelihood of success. Following argument at the hearing

10

and upon review of the record, the Court is satisfied that at this stage La Belle has presented enough evidence to show La Belle is likely to succeed on the merits with respect to at least one if not both of its claims for breach of contract.

In a diversity action such as this, state law governs the rules for construing contractual agreements. *Orion Fin. Corp. of S. Dakota v. Am. Foods Grp., Inc.*, 281 F.3d 733, 738 (8th Cir. 2002). The parties agree that Missouri law governs this action. In determining the scope of Missouri law, the Court is bound by the decisions of the Missouri Supreme Court, although decisions from the Missouri Court of Appeals are also relevant and "must be followed when they are the best evidence of Missouri law." *Taylor v. St. Louis Cnty. Bd. of Election Comm'rs*, 625 F.3d 1025, 1027 and 1028, n.2 (8th Cir. 2010) (citation and quotation omitted).

Under Missouri law, the elements of a breach of contract action are: "(1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Keveney v. Missouri Mil. Acad.*, 304 S.W.3d 98, 104 (Mo. 2010) (en banc). A plaintiff must "identify which rights or obligations [the defendant] breached under the contract in order to establish a claim for breach of contract." *Lucero v. Curators of Univ. of Missouri*, 400 S.W.3d 1, 5 (Mo. Ct. App. 2013) (quotation and citation omitted). Here, La Belle has identified two contract terms it alleges Defendants have breached – Article VI,

sale of the leased premises, and Article II, setting the rate of rent for first renewal term.

With regard to Article VI, Defendants argue the terms of this provision are not enforceable because Article VI is merely an agreement to agree at sometime in the future, which is a nullity under law. *Jenks v. Jenks*, 385 S.W.2d 370, 376 (Mo. App. 1964). Defendants argue that Article VI leaves a number of the terms for the purchase of the lease property undefined, such as price, the description of the land, and the time of sale and, therefore, it is unenforceable. Citing to *Green Street 2900 Investors, LLC v. St. Louis Woodworks, Inc.*, 654 S.W.3d 380, 389 (Mo. Ct. App. 2022), Defendants argue that Article VI is not enforceable as a contract because there is nothing in its provisions that requires Defendants to sell to La Belle a specific parcel of property by a specific time for a specific amount of money.

In general, courts do not create contracts for the parties where there is no evidence of a meeting of the minds as to essential terms. *See United States v. 518.77 Acres of Land, More or Less, Situate in Henry Cnty., State of Mo.*, 545 F. Supp. 1246, 1247 (W.D. Mo. 1982). "If the parties have reserved the *essential* terms of the contract for future determination, there can be no valid agreement." *Harrell v. Mercy Health Servs. Corp.*, 229 S.W.3d 614, 619 (Mo. Ct. App. 2007) (emphasis added) (quoted case omitted). Here, La Belle argues that all the essential, material terms are present in Article VI as amended in the First Amendment.

12

The Court agrees with Defendants that price is an essential term of a contract. It must be sufficiently definite and ascertainable from the agreement. *Sedmak v. Charlie's Chevrolet, Inc.*, 622 S.W.2d 694, 697 (Mo. Ct. App. 1981). To that end, Missouri courts require that an agreement must either set the price or provide a method to ascertain the price. *Dierker Assocs., D.C., P.C. v. Gillis*, 859 S.W.2d 737, 743 (Mo. Ct. App. 1993). While the price for the sale of the leased premises and all the surrounding acreages is not set out in Article VI of the Forage Land Lease as amended, Article VI does provide a method by which to determine price – the parties are to agree as to a fair market price and if the parties are unable to agree, a third-party appraiser shall establish a fair market price. The Court further finds that the method to determine price in the Forage Land Lease as amended by the First Amendment is sufficiently definite. *K.C. Air Cargo Servs., Inc. v. City of Kansas City*, 523 S.W.3d 1, 7 (Mo. Ct. App. 2017). The agreement for sale of leased premises does not fail for lack of price. *Id.; see also Dierker Associates, D.C., P.C.*, 859 S.W.2d at 743.

As for the description of the land, the Court finds that the land is sufficiently described in Article VI to be the Leased Premises as defined by the Forage Land Lease, and "*all* additional acreage surrounding the Leased Premises consistent with existing parcel legal descriptions and/or tax descriptions." (ECF No. 1, Ex. C at 1). With regard to time of performance, Article VI provides that the sale of the land is to take place over the course of up to five years from the date of the

13

commencement date of the Forage Land Lease, which commenced on January 1, 2020.  Further, La Belle has provided evidence from which a finder of fact may conclude that either the parties have waived this time schedule or that Defendants have stymied and prevented performance of the contract – the sale of all the land – within the agreed upon timeline in Article VI as amended.  *Sassenrath v. Sassenrath*, 657 S.W.2d 671, 674 (Mo. Ct. App. 1983).  Based on the record before the Court, Defendants' argument that Article VI is merely an agreement to agree in the future is without merit.

Defendants also argue that La Belle is not likely to succeed on the merits because it is precluded from bringing its breach of contract claims because the company failed to comply with the notice of default and cure provision of the Forage Land Lease and, thus, it has not met a condition precedent.

 "A condition precedent is an act or event that must exist or occur before a duty to perform arises." *See In re Marriage of Busch*, 310 S.W.3d 253, 265 (Mo. Ct. App. 2010); *see also Vantage Credit Union v. Chisholm*, 447 S.W.3d 740, 746 (Mo. Ct. App. 2014).  Article XI of the Forage Land Lease does provide that "[i]n the event of default by Landlord … Tenant shall provide written notice of such default and Landlord shall have thirty (30) days thereafter to cure such default." (ECF No. 1, Ex. B at 8).  Further, "[i]f such default is not cured within said grace period, Tenant may … terminate this Lease upon notice to Landlord and/or seek any other remedy available at law or in equity." (*Id.*)  To the extent Article XI is

14

condition precedent to bringing suit under Missouri law, [2] La Belle has presented evidence from which a finder of fact could conclude that La Belle did notify Defendants of their alleged breach of the Forage Land Lease and provided them with time to cure, at least with regard to Defendants' alleged breach of the provisions in Article VI for the sale of the leased land.

On the current record, the Court finds La Belle has shown that it is likely to succeed on the merits as to at least one of its claims for breach of the Forage Land Lease, if not both. La Belle has shown that there is evidence that Defendants failed to perform under Article VI of the Forage Land Lease as amended in that there is evidence that Defendants hindered or prevented the sale of the leased premises and all the surrounding acres, despite La Belle being ready and willing purchase the land.  La Belle has also shown that there is evidence that the parties have failed to reach an agreement as to the rate of rent for the first renewal term under Article II of the Forage Land Lease, and there have been no efforts to obtain the new market rate from a third-party appraiser.

---

[2] Defendants state in their Memorandum in Support of their Motion to Dismiss that Missouri courts "strictly enforce" notice-and-cure provisions as conditions precedent to exercising remedies for beach.  In support of this assertion, Defendants cite to and quote language from *State ex rel. Nixon v. Prudential Health Care Plan, Inc.*, No. 4:00-CV-8 ERW, 2000 WL 33952262, at *4 (E.D. Mo. June 28, 2000). This case, however, relied on a federal district court case interpreting Maryland law, *Choice Hotels International, Inc. v. Madison Three, Inc.*, 83 F. Supp. 2d 602, 608 (D. Md. 2000), and a federal district court case interpreting New York law.  *Sauer v. Xerox Corp.*, 17 F. Supp. 2d 193, 197 (W.D.N.Y. 1998). *See also Allied Servs., LLC v. Smash My Trash, LLC*, No. 21-CV-00249-SRB, 2024 WL 2842633, at *45 (W.D. Mo. May 16, 2024) (citing *State ex rel. Nixon*, 2000 WL 33952262 for Missouri law on notice and cure).  The Court has found scant Missouri case law applying notice and cure provisions as conditions precedent in agreements involving real property.

The Court now turns to the remaining *Dataphase* factors and finds that they also weigh in favor of issuing a temporary restraining order. With regard to irreparable harm, the Eighth Circuit Court of Appeals has recognized that "monetary relief fails to provide adequate compensation for an interest in real property, which by its very nature is considered unique." *O'Hagan v. United States*, 86 F.3d 776, 783 (8th Cir. 1996). La Belle has shown that the property at issue in this case is particularly unique in that it is adjacent to La Belle's dairy operations. La Belle has presented evidence that if evicted it would suffer harm, including loss of business goodwill, that cannot be remedied through an award of money damages. Defendants have threatened to go forward with eviction proceedings after April 3, 2025, and there is no evidence that replacement land is available, let alone on such short notice. In the event of eviction, La Belle would have no land to plant crops in order to feed and sustain its herd of dairy cows, and it would not be able to find new property that would allow La Belle to spread the manure that is currently contained in its manure lagoon storage facilities. In short, La Belle has shown that it would suffer irreparable injury if the *status quo* is not maintained. *Com. Credit Grp., Inc. v. Ray Cnty. Equip. Leasing, LLC*, No. 11-00947-CV-W-GAF, 2011 WL 13233860, at *3 (W.D. Mo. Sept. 22, 2011) ("there is a threat of irreparable harm or injury to Plaintiff absent a temporary restraining order preventing Defendant from leasing, selling, or otherwise transferring, removing, misusing, or damaging the [property]"). *See also Whole Foods Mkt.*

*Grp., Inc. v. Wical Ltd. P'ship*, 288 F. Supp. 3d 176, 188 (D.D.C. 2018) ("[A] tenant's right to possession of a property is irreparable, given that property 'tends to have unique characteristics'").

The Court further finds that Defendants will suffer little to no harm if an injunction is entered. Defendants are being paid rent at the elevated rate of $290 a tillable acre on a lease that is renewable through January 2035. And aside from the parties' disputes over the sale of the land and the proposed addendum setting rent for the renewal term, Defendants presented no evidence that Plaintiff has otherwise breached or defaulted on the Forage Land Lease.

Finally, the Court finds that entering an injunction precluding eviction serves the public interest. La Belle's dairy operation is in La Belle, Missouri, and if evicted from the leased property, which is adjacent to its dairy operation, there is a risk that La Belle would no longer be able to comply with its government-approved nutrient management plan, as it would have nowhere to spread the manure generated by its large herd of dairy cows.

In sum, the Court finds that a temporary restraining order is necessary and proper in light of the balance among the irreparable harm to La Belle, the relatively less-significant harm that the temporary injunction may inflict on Defendants, and the public interest in continued compliance with environmental regulations. Therefore, upon careful consideration of all the *Dataphase* factors, the Court will grant La Belle's request for a temporary restraining order against Defendants based

17

on La Belle's claims for breach of contract. La Belle will be required to give security in the amount of $300,000 to pay the costs and damages sustained by Defendants in the event they are later found to have been wrongfully restrained. *See* Fed. R. Civ. P. 65(c).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff La Belle Dairy, LLC's motion for a temporary restraining order against Defendants Sharpe Holdings, Inc. and the Charles N. Sharpe, Jr. Foundation is **GRANTED.** [ECF No. 7].

**IT IS FURTHER ORDERED** that pending this Court's issuance of a ruling with respect to Plaintiff's request for a preliminary injunction, Defendants Sharpe Holdings, Inc. and the Charles N. Sharpe, Jr. Foundation are enjoined and restrained from directly, on their own or on behalf of, or in conjunction or concert with, any employee, agent, director, officer, shareholder, associate, partner, manager, advisor, independent contractor, proprietor, consultant, or in any capacity, taking any action to evict or otherwise interfere with La Belle Dairy, LLC's possession of the Leased Premises as defined by the Forage Land Lease and the amendments thereto.

**IT IS FURTHER ORDERED** that Plaintiff La Belle Dairy, LLC's shall post security in the amount of Three Hundred Thousand Dollars ($300,000) with the Clerk of the Court by March 31, 2025, in cash or through a Court-approved surety. *See* Fed. R. Civ. P. 65(c).

Dated this 25th day of March, 2025.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE