UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| LA BELLE DAIRY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:25-CV-14 HEA |
| | ) | |
| SHARPE HOLDINGS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Sharpe Holdings, Inc.'s ("Sharpe Holdings"), motion to disqualify Plaintiff's counsel, Jeffrey L. Schultz and Angela Kennedy, and the law firm of Armstrong Teasdale, LLP ("Armstrong") due to a conflict of interest. (ECF No. 75). Sharpe Holdings contends Armstrong has a conflict of interest because it represented Sharpe Holdings at the time this suit was filed, or in the alternative, that Sharpe Holdings was Armstrong's former client in the same or a substantially related matter. Plaintiff opposes the motion, which is fully briefed and ripe for review. For the reasons that follow, Sharpe Holding's Motion to Disqualify is denied.

### I.    *Facutal Background*

This case arises from a dispute over property. La Belle Dairy, LLC ("La Belle") owns a dairy operation in La Belle, Missouri, which it bought from Sharpe

Holdings in 2017, and it leases from the defendants approximately 6,100 acres of farmland that are adjacent to the dairy.  A dispute has arisen between the parties as to La Belle's rights to lease and purchase the approximately 6,100 acres of farmland from Sharpe Holdings.

### A. Armstrong's Representations of Sharpe Holdings

In January 2015, Sharpe Holdings engaged Armstrong concerning legal matters involving the Occupational Safety and Health Administration ("OSHA"). The engagement contemplated that Armstrong would offer professional advice through Armstrong attorneys, Julie O'Keefe and John Cowling, both of whom maintain offices in Armstrong's St. Louis, Missouri office. To secure the engagement, Sharpe Holdings remitted a $25,000.00 retainer to Armstrong that was placed in Armstrong's client trust account. The OSHA proceedings involved alleged regulatory violations at the dairy, which was ultimately sold to La Belle.

In September 2016, Armstrong began defending Sharpe Holdings in an administrative action brought by the Department of Labor with the Occupational Safety and Health Review Commission (the "OSHA Action"). The OSHA Action was filed against Sharpe Holdings related to its ownership and operation of the dairy. In August 2017, Armstrong negotiated terms of a settlement in the OSHA Action.

### B.    Sale and Lease of the Land to La Belle

In March 2017, Sharpe Holdings and La Belle entered into a Letter of Intent for Sharpe Holdings to sell its dairy to La Belle.  The sale negotiations and resulting

transactions were handled by Husch Blackwell LLP for La Belle and Stinson LLP for Sharpe Holdings.  In May 2017, Sharpe Holdings engaged Julie O'Keefe, the attorney at Armstrong who represented Sharpe Holdings in the OSHA Action, to provide counsel to Sharpe Holdings on the sale of the dairy to La Belle. Ms. O'Keefe advised Sharpe Holdings on the OSHA Action's impact on the sale of the dairy to La Belle.  Ms. O'Keefe also spoke with La Belle's counsel about the OSHA Action.

On May 24, 2017, Sharpe Holdings and La Belle entered into an Asset Purchase Agreement to sell the dairy to La Belle, with closing of the sale set to take place in December 2017.  On or about February 26, 2018, Sharpe Holdings' General Counsel, David R. Melton, contacted Ms. O'Keefe regarding the dairy and OSHA matters. Armstrong performed no other legal work for Sharpe Holdings after this date.

In 2020, Sharpe and La Belle negotiated and executed the Forage Land Lease. The negotiated lease contains a provision regarding the sale of the leased premises, which provides that La Belle must purchase, and Sharpe Holdings must sell, all of the leased premises under the Forage Land Lease, plus all additional attached acreage surrounding the lease premises. Armstrong did not participate in the negotiations or preparation of any documents for the farmland lease and purchase rights in dispute in the above-captioned cause of action.

3

### C. The Dispute Between Sharpe Holdings and La Belle

Sometime after 2020, a dispute arose between Sharpe Holdings and La Belle. La Belle alleges that Sharpe Holdings refused to sell land to La Belle in accordance with the Forage Land Lease, and on January 24, 2025, Armstrong filed suit on behalf of La Belle against Sharpe Holdings. Armstrong attorney Jeffery L. Schultz signed and filed the original complaint. (ECF No. 1). On January 29, 2025, Sharpe Holdings sent a notice of default letter to La Belle, which was emailed to Mr. Schultz at Armstrong, and on March 4, 2025, Sharpe Holdings sent another letter to La Belle, which was also emailed to Mr. Schultz, purporting to terminate the lease and demanding that La Belle vacate the leased premises.

On March 12, 2025, Mr. Schultz signed and filed a Motion for Temporary Restraining Order ("TRO") requesting that the Court enjoin Defendants from taking any action to evict or otherwise interfere with La Belle's possession of the leased property. (ECF No. 7). Defendants filed a response in opposition to La Belle's Motion for TRO, attached to which was a declaration signed by Sharpe Holdings' General Counsel, David R. Melton. On March 24, 2025, the Court held a hearing on La Belle's Motion for TRO, at which Mr. Schultz appeared on behalf of La Belle, as did Ian Pitz of the law firm Michael Best LLP.[1]

---

[1] Ian Pitz and David N. Shea of Michael Best LLP did not enter appearances in this case until March 14, 2025. Armstrong attorney Angela Kennedy entered an appearance in this case on March 12, 2025.

On March 25, 2025, the Court granted La Belle's Motion for TRO.  On April 22, 2025, the defendants appealed the Court's ruling to the Eighth Circuit Court of Appeals. Attorneys Paul Brusati, Angela Kennedy, and Jeffery Schultz of Armstrong appeared on behalf of La Belle in the Eighth Circuit, as did attorneys Ian Pitz and David Shea of Micheal Best LLP.  The appeal is still pending, and Sharpe Holdings has not moved to disqualify the Armstrong attorneys in the proceedings before the appellate court.

Although there is an appeal pending, the parties participated in pretrial proceedings in the case at bar, and Mr. Schultz has filed a number of documents in this case including the following: a motion to "compel" a Rule 16 Conference, dated April 25, 2025; the parties' Joint Proposed Scheduling Plan, dated June 10, 2025; a motion for leave to file an amended complaint, dated June 12, 2025; an Amended Complaint, dated August 12, 2025; and Answer to the Defendants' Counterclaims, dated September 26, 2025.

In addition, La Belle served Sharpe Holdings with written interrogatories in June 2025, and requests for admissions in July 2025, both of which were signed by Mr. Schultz.  Mr. Schultz sent a discovery deficiency letter to Sharpe Holdings and participated in subsequent conferences with lawyers for Sharpe Holdings regarding its purported deficiencies. Finally, in an Order dated June 11, 2025, the Court designated Mr. Schultz as lead counsel for purposes of Alternative Dispute

5

Resolution ("ADR"), and Armstrong attorneys participated in the mediation, which took place in December 2025.

On November 7, 2025, Sharpe Holdings received a check from the Missouri Lawyer Trust Account Foundation – Trust Account of Armstrong Teasdale LLP for $25,000 as a refund of the retainer balance.

Sharpe Holdings filed its Motion to Disqualify Armstrong on January 23, 2026 – a full year after Mr. Schultz filed La Belle's Complaint against Sharpe Holdings.

## II.    Discussion

"The decision to grant or deny a motion to disqualify an attorney rests in the discretion of the district court." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1154 (8th Cir. 1999) (quotation omitted). The Court of Appeals for the Eighth Circuit recognizes that a "party's right to select its own counsel is an important public right and a vital freedom that should be preserved," and it cautions that "the extreme measure of disqualifying a party's counsel of choice should be imposed only when absolutely necessary." *Macheca Transp. Co. v. Philadelphia Indem. Co.*, 463 F.3d 827, 833 (8th Cir. 2006) (quotation omitted). "Because of the potential for abuse by opposing counsel," the Eighth Circuit has instructed that motions to disqualify are "subjected to particularly strict scrutiny." *Id.* (quoting *Harker v. Comm'r*, 82 F.3d 806, 808 (8th Cir. 1996)). The party moving for disqualification bears the burden of

6

showing that continuing representation would be impermissible. *A.J. by L.B. v. Kierst*, 56 F.3d 849, 859 (8th Cir. 1995).

There is no dispute that in January 2015, Sharpe Holdings engaged Armstrong to represent it in legal matters involving OSHA. While the OSHA Action was settled in August 2017, and Armstrong last did legal work for Sharpe Holdings in February 2018, Sharpe Holdings argues that it remained a client of Armstrong, because Armstrong did not return its $25,000 retainer until November 2025, which Armstrong did spontaneously without being asked.  Therefore, according to Sharpe Holdings, there is a direct conflict and Armstrong is prohibited from representing La Belle in this matter under Rules 4-1.7(a) and 4-1.10(a) of the Missouri Supreme Court's Rules of Professional Conduct.[2]  Alternatively, Sharpe Holdings argues that it is a former client of Armstrong, and because the OSHA matter involved the dairy that was ultimately sold to La Belle, Armstrong represented it in a substantially related matter to the dispute in this case.  Thus, Sharpe Holdings contends, Armstrong is prohibited from representing La Belle in this matter under Rules 4-1.9(a) and Rule 4-1.10(a) of Missouri Supreme Court's Rules of Professional Conduct.

Plaintiff responds that Sharpe Holdings' arguments are without merit. It maintains that Sharpe Holdings was not a client at the time this suit was filed and,

---

[2] This Court has adopted the Missouri Supreme Court's Rules of Professional Conduct. *See* E.D. Mo. L.R. 12.02.

therefore, Rule 4-1.7(a) is not applicable.  Plaintiff does not dispute that Sharpe Holdings was a client of Armstrong at one time, but it contends that its prior representation is not substantially related to the above-captioned cause of action, which is a property dispute that does not involve the OSHA Action.  Finally, Plaintiff argues that Sharpe Holdings unreasonably delayed in bringing its motion to disqualify and, therefore, it should be denied as untimely.  The Court will first address whether Sharp Holdings' objection to Armstrong's representation of La Belle was waived because it failed to bring the issue to the Court's attention in a timely manner.

A court may consider the timeliness of a motion to disqualify counsel, and waiver alone can be a valid basis for the denial of a motion to disqualify.  *Cent. Milk Producers Co-op. v. Sentry Food Stores, Inc.*, 573 F.2d 988, 992 (8th Cir. 1978).  "A timeliness requirement ensures that the Rules of Professional Conduct are applied for their intended purpose, to regulate the conduct of counsel, and not as a weapon against an attorney's client." *Polish Roman Cath. St. Stanislaus Par. v. Hettenbach*, 303 S.W.3d 591, 599 (Mo. Ct. App. 2010).  Accordingly, a motion to disqualify must "be made with reasonable promptness after a party discovers the facts which lead to the motion." *Cent. Milk Producers Co-op.*, 573 F.2d at 992. The Eighth Circuit "will not allow a litigant to delay filing a motion to disqualify in order to use the motion later as a tool to deprive his opponent of counsel of his choice after substantial preparation of a case has been completed." *Id.*  Therefore, "[a] party who

8

knowingly refrains from asserting a prompt objection to opposing counsel is deemed to have waived the objection." *Enslein v. Di Mase*, No. 16-09020-CV-W-ODS, 2018 WL 1426361, at *1 (W.D. Mo. Mar. 22, 2018) (citing *Terre Du Lac Prop. Owners' Ass'n, Inc. v. Shrum*, 661 S.W.2d 45, 48 (Mo. Ct. App. 1983)).

The relevant timeframe for filing a motion to disqualify "commences when the moving party either first learned or reasonably should have learned of the...conflict of interest." *Polish Roman Catholic St. Stanislaus Parish*, 303 S.W.3d at 599 (citation omitted). Plaintiff argues that Sharpe Holdings learned, or reasonably should have learned, of the alleged conflict – that is, Armstrong's representation of La Belle in this action – at the time this suit was filed, in other words, a year before it filed its motion to disqualify. The Court agrees. It is undisputed that Armstrong did legal work for Sharpe Holdings between 2015 and 2018, and Armstrong filed suit against Sharpe Holdings on behalf of La Belle on January 24, 2025.  Armstrong was counsel of record in this case from date the case was filed.

In response, Sharpe Holdings contends that it promptly raised an objection directly with La Belle and Armstrong within weeks of "discovering" the alleged conflict. According to Sharpe Holdings, it "discovered" Armstrong was representing La Belle on or about September 2, 2025.

In support of this assertion, Sharpe Holdings submitted Mr. Melton's declaration.  Mr. Melton declares that on or about January 22, 2025, he received an

9

email from Ian Pitz, an attorney with Michael Best LLP stating that his firm had been retained to represent La Belle in a dispute that had arisen between Sharpe Holdings and La Belle.  According to Mr. Melton, after the complaint was filed, attorneys with Micheal Best sent Sharpe Holdings' counsel numerous correspondence on Micheal Best's letterhead that were forwarded to him.  "At no time during the first several months of the lawsuit, did I or anyone at Sharpe Holdings recognize or appreciate that [La Belle] had retained Armstrong to act as its local counsel in the lawsuit. At all times, I was under the honest belief that [La Belle] was solely represented by attorneys from Michael Best."  (ECF No. 75, Ex. 1).

Mr. Melton further declares that on September 2, 2025, he was provided with a copy of La Belle's Appellee Brief, which was also provided to directors of Sharpe Holdings and Robert Hambelton. According to Mr. Melton, Mr. Hambelton noticed that Mr. Schultz of Armstrong was listed on the first page of La Belle's Appellee Brief as an attorney for La Belle,[3] and Mr. Hambelton brought the issue of Armstrong's representation to Mr. Melton's attention.  Sharpe Holdings maintains that it "did not know of or appreciate that there may have been a conflict until September 2, 2025, as Sharpe Holdings was under the belief that [La Belle] was being solely represented by attorneys at Micheal Best & Friedrich LLP."  (ECF No. 90 at 3).

---

[3]Attorneys Angela B. Kennedy and Paul L. Brusati of Armstrong are also listed on the first page of the Appellee Brief as attorneys for La Belle.

The Court finds Sharpe Holding's position is untenable. Mr. Schultz of Armstrong signed and filed nearly all the court filings in this case on behalf of La Belle, including key filings such as the complaint, the Motion for TRO, the amended complaint, and La Bell's answer to Sharpe Holdings' Counterclaim.  Mr. Melton signed and submitted a declaration in response to La Belle's Motion for TRO.  The Court finds it improbable that Mr. Melton, an attorney and Sharpe Holdings' General Counsel, did not review La Belle's Motion for TRO and supporting memorandum to prepare his declaration.

Mr. Schultz also signed and served written discovery on Sharpe Holdings, over which a discovery dispute arose, and he signed and sent a letter regarding Sharpe Holdings' purported deficiencies.  In addition, the Court designated Mr. Schultz as lead counsel for purposes of ADR, and he participated in mediation.  In short, Mr. Schultz of Armstrong was not just a consulting attorney working behind the scenes. He and Angela Kennedy were La Belle's attorneys of record,  until March 14, 2025, Armstrong attorneys were the only attorneys who had entered an appearance in the case for La Belle.  Mr. Melton may not have "recognized or appreciated" that Armstrong was representing La Belle until September 2, 2025, but he should have known months earlier. *Polish Roman Catholic St. Stanislaus Parish*, 303 S.W.3d at 599.

But even if Mr. Melton did not recognize or appreciate that Armstrong was representing La Belle until September 2, 2025, other agents of Sharpe Holdings did.

11

Sharpe Holdings is a company, and it can obtain knowledge only through its agents. Under well-established rules of agency, the knowledge of agents obtained in the course of their employment is imputed to the company. *Wandersee v. BP Prods. N. Am., Inc.*, 263 S.W.3d 623, 629 (Mo. 2008) (citation omitted).  Sharpe Holdings' retained counsel knew in January 2025 that Armstrong was representing La Belle in this case.

Furthermore, even accepting the company's contention that no one at Sharpe Holdings knew or even should have known that Armstrong represented La Belle until September 2, 2025, when the fact was brought directly to Mr. Melton's attention, Sharpe Holdings delayed in raising the issue. Sharpe Holdings admits that it waited three months, until December 8, 2025, to contact Armstrong and La Belle about the issue. The motion to disqualify was not filed with the Court until January 23, 2026 – four and a half months later.

In an attempt to explain the months-long delay, Mr. Melton states in his declaration that he was "initially confused by Armstrong's involvement in the above-captioned case and the related Appeal."-blinded by the light, if you will. (ECF No. 75, Ex. 1 at 5).  And that as General Counsel for Sharpe Holdings and other related entities, he has overseen a number of legal matters and hired more than fifteen different law firms in his three decades as General Counsel, and that "[i]t is sometime difficult for [him] to remember over the past three decades which law firms were hired by the various [entities]."  (*Id.*) But Armstrong's representation of Sharpe

12

Holdings did not take place 30 years ago – Armstrong last did work for Sharpe Holdings in February 2018 – seven years prior to the filing of this suit – and it appears from the record that Mr. Melton personally oversaw the representation, or at the very least, he had direct contact with the Armstrong attorney who performed the work on Sharpe Holdings' behalf.

Despite the fact that Mr. Hambelton raised the issue of Armstrong's representation with him directly in September 2025, and that he was personally involved in the OSHA Action in 2018, Mr. Melton maintains that it was not until Sharpe Holdings received the refund check for the retainer from Armstrong on November 7, 2025, that he confirmed that Armstrong had represented Sharpe Holdings.[4]   The record does not support Mr. Melton's assertion. Further, Mr. Melton's assertion is inconsistent with other statements he made in his declaration, such as that "[he] was operating under the belief that Armstrong was at all relevant times Sharpe Holdings' attorneys[ ]" and "until having received the $25,000 check, [he] reasonably believed that Sharpe Holdings maintained a confidential attorney-client relationship with Armstrong." (*Id.* at 6-7).

Additionally, in its reply memorandum, Sharpe Holdings argues that its delay in discovering the conflict and raising the issue of disqualification was due to

---

[4]Mr. Melton also states in his declaration that his investigation into the matter was delayed, in part, because he took medical leave in September 2025.  Mr. Melton does not state how long he was out on leave or why no one else at Sharpe Holdings was suitable or available to investigate the issue.

13

Armstrong's failure to: (1) timely communicate termination of representation, and (2) timely seek a conflict waiver from Sharpe Holdings. This assertion does not explain the delay or that they are dispositive as to the issue of waiver.  Certainly, best practices provide that an attorney ought to communicate to his or her client the termination of an attorney-client relationship, and under defined circumstances, Rule 4-1.9(a) requires an attorney to seek consent and a conflict waiver from a former client.  Armstrong neither explicitly communicated with Sharpe Holdings that the attorney-client relationship had ended nor did it seek Sharpe Holdings' consent before representing La Belle. This does not change the fact that Sharpe Holdings knew or should have known that Armstrong was or had been its retained counsel, and that it was representing La Belle, an adversary, in the above-captioned cause of action.  Mr. Melton, who is Sharpe Holdings General Counsel and worked with Armstrong on the OSHA Action, admits that he was involved in this case from the beginning, and yet Sharpe Holdings delayed 12 months before filing its motion to disqualify Armstrong.

In addition to the length of the delay in seeking disqualification, "Eighth Circuit precedent and cases in this district have considered . . . 'the prejudice that a nonmoving party would face if a motion were granted.'" *Ordont Orthodontic Lab'ys, Inc. v. Ortho Sols., LC*, No. 4:23-CV-00468-SEP, 2024 WL 4345762 at *4 (E.D. Mo. Sept. 30, 2024), Litigants are not permitted to use disqualification as "a tool to

14

deprive [their] opponent of counsel of [their] choice after substantial preparation of a case has been completed." *Central Milk Producers Co-op.*, 573 F.2d at 992.

Based on the record, Armstrong has done a significant amount of work in this case. Armstrong filed La Belle's Motion for TRO, which the Court granted, and Sharpe Holdings appealed. In the appeal, Armstrong signed and submitted La Belle's Appellee Brief.[5] Armstrong served written discovery requests and responded to written discovery. Armstrong also participated in mediation, which took place in December 2025, shortly before Sharpe Holdings filed its motion to disqualify. Armstrong also represents that it has been actively engaged in working with La Belle's consulting and testifying expert witnesses. In filings with the Court, Sharpe Holdings depicts Armstrong as local counsel, but this characterization is not supported by the record. Disqualifying Armstrong at this stage in the litigation would be prejudicial to La Belle. *Ordont Orthodontic Laboratories, Inc.*, 2024 WL 4345762 at *4; *see also In re Metoprolol Succinate Pat. Litig.*, No. 4:03-CV-592 RWS, 2005 WL 1661509 (E.D. Mo. July 8, 2005) at *4 (denying disqualification where plaintiff did not file motion "until the parties had completed substantial discovery and Defendants were preparing a motion for summary judgment.").

---

[5]The Court has reviewed the appellate record, and three Armstrong attorneys are attorneys of record on the appeal. Based on the filings in the appellate record, the Court finds it significant that Sharpe Holdings did not move to disqualify Armstrong as appellate counsel or otherwise raise the conflict of interest issue with the Eighth Circuit.

15

In sum, Sharpe Holdings knew or should have known Armstrong represented La Belle when this suit was filed.  Sharpe Holdings, however, did not file its motion to disqualify Armstrong until nearly one year after it learned, or reasonably should have learned of the purported conflict.  The delay was not justified under the facts of the case.  Therefore, the Court finds that Sharpe Holding's motion to disqualify was untimely and constituted a waiver of its right to raise the issue of a conflict of interest.  *Central Milk Producers Co-op.*, 573 F.2d at 992 (waiver alone is a valid basis for the denial of a motion to disqualify). *See also Geissal v. Moore Med. Corp.*, 92 F. Supp. 2d 945, 947 (E.D. Mo. 2000) (movant waived right to disqualification by eleven-month delay); *Ordont Orthodontic Laboratories, Inc.*, 2024 WL 4345762, at \*5 (plaintiff waived right to disqualification by waiting eleven months); *In re Metoprolol Succinate Pat. Litig.,* 2005 WL 1661509, at \*4 (thirteen month delay in filing motion  "was unreasonable and constitutes a waiver").

Sharpe Holdings' Motion to Disqualify Armstrong as counsel in this case is denied. Because the Court finds that Sharpe Holdings waived its right to assert a conflict based on Armstrong's representation of its adversary, La Belle, the Court need not address whether an actual conflict exists.

16

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Sharpe Holdings, Inc.'s motion

to disqualify Plaintiff's counsel, Jeffrey L. Schultz and Angela Kennedy, and the law

firm of Armstrong Teasdale, LLP is **DENIED.**  [ECF No. 75].

Dated this 23rd day of April, 2026.

_____

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE

17