# United States Court of Appeals
## *For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
### St. Louis, Missouri 63102

**Susan E. Bindler**
*Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

July 23, 2026

Patrick Jerome McAndrews
SPENCER & FANE
Suite 1400
1000 Walnut Street
Kansas City, MO  64106-2140

RE:  25-1803  La Belle Dairy, LLC v. Sharpe Holdings, Inc., et al

Dear Counsel:

The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion.

Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. Except as provided by Rule 25(a)(2)(iii) of the Federal Rules of Appellate Procedure, no grace period for mailing is allowed. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

Susan E. Bindler
Clerk of Court

NDG

Enclosure(s)

cc:    Paul L. Brusati
       Clerk, U.S. District Court, Eastern District of Missouri
       Angela Belle Kennedy
       Shilee T. Mullin
       Ian Pitz
       Jeffrey L. Schultz
       Catherine L. Schwarze
       David N. Shea

District Court/Agency Case Number(s):  2:25-cv-00014-HEA

## United States Court of Appeals
### *For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Susan E. Bindler**
*Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

July 23, 2026

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

  RE:  25-1803  La Belle Dairy, LLC v. Sharpe Holdings, Inc., et al

Dear Sir or Madam:

  A published opinion was filed today in the above case.

  Counsel who presented argument on behalf of the appellant was
Patrick Jerome McAndrews, of Kansas City, MO. The following attorney appeared on the
appellant brief;  Shilee T. Mullin, of Omaha, NE.

  Counsel who presented argument on behalf of the appellee and appeared on the brief was
Ian Pitz, of Madison, WI. The following attorneys also appeared on the appellee brief;  Jeffrey L.
Schultz, of Saint Louis, MO.,  Paul L. Brusati, of Saint Louis, MO.,  Angela Belle Kennedy,
of Saint Louis, MO., and  David N. Shea, of Madison, WI.

  The judge who heard the case in the district court was Honorable Henry Edward Autrey.

  If you have any questions concerning this case, please call this office.

          Susan E. Bindler
          Clerk of Court

NDG

Enclosure(s)

cc:  MO Lawyers Weekly

    District Court/Agency Case Number(s):   2:25-cv-00014-HEA

# United States Court of Appeals
## For the Eighth Circuit
_____

No. 25-1803
_____

La Belle Dairy, LLC

*Plaintiff - Appellee*

v.

Sharpe Holdings, Inc.; Charles N. Sharpe, Jr. Foundation

*Defendants - Appellants*
_____

Appeal from United States District Court
for the Eastern District of Missouri - Hannibal
_____

Submitted: April 14, 2026
Filed: July 23, 2026
_____

Before KELLY, ARNOLD, and KOBES, Circuit Judges.
_____

ARNOLD, Circuit Judge.

As its name suggests, La Belle Dairy, LLC, owns a dairy in Northeast Missouri near the town of La Belle. For years it has leased thousands of acres of forage land next to the dairy from Sharpe Holdings, Inc., and its successor in interest, the Charles N. Sharpe, Jr. Foundation (for simplicity, we will refer to them in the singular as "Sharpe"), so it can grow food for the dairy's cattle and properly dispose of their

waste according to its government-mandated nutrient management plan. After La Belle Dairy sued Sharpe in the district court[1] claiming that Sharpe had breached the parties' lease, Sharpe responded by accusing La Belle Dairy of a breach of its own and threatened to initiate legal action to evict it from the land. La Belle Dairy in turn asked the district court to enjoin Sharpe from carrying out its threat, and the district court agreed to do so. Sharpe appeals the court's decision. We affirm.

Before addressing Sharpe's contentions, we need to make sure that we have jurisdiction over this appeal even though the parties both say we do. *See Huggins v. FedEx Ground Package Sys., Inc.*, 566 F.3d 771, 773 (8th Cir. 2009). We have jurisdiction to review a district court's interlocutory order granting a preliminary injunction, *see Choreo, LLC v. Lors*, 164 F.4th 667, 669 (8th Cir. 2026) (citing 28 U.S.C. § 1292(a)(1)), but jurisdiction does not extend to a court's grant of a temporary restraining order. *See In re Rutledge*, 956 F.3d 1018, 1026 (8th Cir. 2020).

Here, La Belle Dairy filed what it called a motion for temporary restraining order and preliminary injunction. In its motion, La Belle Dairy asked the district court to enter a temporary restraining order followed by a preliminary injunction enjoining Sharpe from interfering with its possession of the leased premises. The district court then entered an order scheduling a hearing on La Belle Dairy's "Motion for Temporary Restraining Order." The day after the court conducted that hearing, it granted La Belle Dairy a "temporary restraining order" stating that pending its "issuance of a ruling with respect to Plaintiff's request for a preliminary injunction," Sharpe was enjoined from evicting or otherwise interfering with La Belle Dairy's possession of the leased premises.

---

[1]The Honorable Henry Edward Autrey, United States District Judge for the Eastern District of Missouri.

Though the district court appears at first blush to have issued an unreviewable temporary restraining order, courts have recognized that the label affixed to the top of an order does not control whether it is a preliminary injunction or a temporary restraining order. *See Abbott v. Perez*, 585 U.S. 579, 594 (2018). Whatever it might be called, what matters is whether the order has the "practical effect" of granting an injunction. *See id.*

We think the order here, despite its label, has the practical effect of granting an injunction, and so we have jurisdiction to review it. For one thing, the order was in effect for more than 28 days when Sharpe filed its notice of appeal challenging it. Under Federal Rule of Civil Procedure 65(b)(2), temporary restraining orders issued without notice to the adverse party can last up to 28 days unless the adverse party consents to a longer extension. Though the order here was issued with notice to the adverse party, in practice courts often view orders exceeding the length of time set out in Rule 65(b)(2) as having the practical effect of a preliminary injunction. *See Quinn v. Missouri*, 839 F.2d 425, 426 (8th Cir. 1988) (per curiam); *see also H-D Mich., LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 844–45 (7th Cir. 2012). In addition, the order here didn't contain an expiration date: It was open-ended, saying it would remain in effect pending a ruling on La Belle Dairy's request for a preliminary injunction. We encountered a similarly worded order in *Nordin v. Nutri/Sys., Inc.*, 897 F.2d 339, 341–43 (8th Cir. 1990), and concluded that it was in substance a preliminary injunction and thus appealable. We reach the same conclusion here.

Assured of our jurisdiction, we turn to Sharpe's contentions. First, it asserts that the district court entered what was in practical effect a preliminary injunction without giving Sharpe adequate notice or an opportunity to be heard, in violation of Sharpe's right to due process. More specifically, it takes issue with the court's entering a preliminary injunction even though La Belle Dairy's proposed order and the court's notice of hearing mentioned only a temporary restraining order, not to

-3-

mention that the court gave a mere six days' notice of the hearing. At the hearing, the district court heard arguments from counsel, but neither side presented testimony or other evidence. Sharpe asserts that it wasn't given a fair opportunity to challenge the evidence La Belle Dairy submitted in support of its motion (such as by cross-examining a witness who submitted declarations attached to the motion) or to conduct any discovery. In sum, Sharpe says, had it "known that the hearing was for a preliminary injunction, it may have proceeded differently, by seeking discovery (as no discovery had been exchanged), requesting an evidentiary hearing, and/or presenting additional evidence."

The difficulty for Sharpe is that it waived, or at least forfeited, this contention. At no point did it raise its concerns to the district court, and it challenged La Belle Dairy's documentary evidence with its own when it submitted its response to the motion. Sharpe also proceeded as if it understood that a preliminary injunction was under consideration at the hearing, as it recognized more than once that the relief awarded might last for years. It further admits that the parties used "preliminary injunction phraseology" at the hearing. Even more, Sharpe appears to have ignored overtures from La Belle Dairy's attorney about scheduling a preliminary-injunction hearing. It appears as well in its briefing to disclaim the value of an evidentiary hearing (on the ground that the district court's mind was already made up) even though a hearing is the very relief it's asking for. So it seems that Sharpe made a conscious decision not to seek more process before the district court and has waived its challenge.

Sharpe says that it shouldn't be expected to seek a hearing when it was La Belle Dairy who sought preliminary relief. The burden of proof on the merits of La Belle Dairy's request for preliminary relief, however, is beside the point when it is Sharpe who is arguing that the district court didn't give it an adequate opportunity to respond to La Belle Dairy's request. If Sharpe thought more process was needed, it was incumbent on Sharpe not to avoid it or disclaim it.

-4-

Even if we viewed Sharpe's due-process argument as merely forfeited, not waived, and reviewed Sharpe's contention for plain error, Sharpe would not prevail. We may grant plain-error relief when an error is plain, affects a party's substantial rights, and seriously affects the fairness, integrity, or public reputation of the proceedings. *See Moore v. Am. Fam. Mut. Ins. Co.*, 576 F.3d 781, 786 (8th Cir. 2009). Due process requires that a party whose rights are to be affected by court action be given an opportunity to be heard after receiving notice "at a meaningful time and in a meaningful manner." *See Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 665 (8th Cir. 2022). But Sharpe hasn't identified any binding authority indicating that the notice given here or the timeline of events plainly violated due process. In fact, some decisions from other circuit courts suggest there's no error here at all, much less a plain one. *See, e.g.*, *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1152–54 (10th Cir. 2001). Nor has Sharpe carried its burden to show that any error affected its substantial rights, as it doesn't offer any specifics about how additional process would have helped it respond to La Belle Dairy's request for preliminary relief. *See id.* at 1154. In fact, it doesn't even assert that it would've proceeded differently: It merely says it "may have" done so.

Sharpe directs our attention to the part of the *Tumey* opinion that expressed "grave doubts" about whether the party against whom a preliminary injunction was entered in that case had had adequate notice and an opportunity to be heard. *See Tumey*, 27 F.4th at 665. But there, the appellant had learned only one hour before the hearing that the court might consider entering a preliminary injunction. *See id.* at 662. Critically, too, the appellant had objected and asked the court not to enter a preliminary injunction at that time and specifically explained why it needed more time to prepare a response. *See id.* That's not the situation we confront here.

So we turn to the merits of the case. Our review of a preliminary injunction is layered: We review findings of fact for clear error, conclusions of law de novo, and the ultimate decision to grant the injunction for an abuse of discretion. *See id.* at 665.

-5-

This discretion is "considerable," and the scope of our review is "very limited." *See Sleep No. Corp. v. Young*, 33 F.4th 1012, 1016 (8th Cir. 2022). In deciding whether to issue a preliminary injunction, district courts consider the probability that the movant will succeed on the merits, the threat of irreparable harm to the movant, the balance between this harm and the injury that granting the injunction would inflict on the other party, and the public interest. *See id.* The district court held that La Belle Dairy was "likely to succeed on the merits as to at least one of its claims for breach of the Forage Land Lease, if not both." It also concluded that the remaining considerations weighed in La Belle Dairy's favor, and so it granted the motion.

We begin with the consideration that we have described as the most significant—the probability that the movant will succeed on the merits. *See id.* To clear this hurdle, La Belle Dairy need not show that it "has a greater than fifty per cent likelihood of success"; it merely needs to show that it has a "fair chance of prevailing," or "that its claims provide fair ground for litigation." *See id.* at 1016–17.

According to the complaint, when La Belle Dairy acquired the dairy from Sharpe, Sharpe agreed to grow food for the dairy's cattle on the forage land. Sharpe also promised that if it terminated that agreement, it would lease at least six thousand acres of the forage land to La Belle Dairy. The complaint states that when Sharpe terminated that agreement, it followed through on its promise, and the parties entered into the lease involved in the dispute here.

La Belle Dairy asserts that Sharpe breached two provisions of the parties' lease. The first deals with rent. La Belle Dairy agreed to pay $185 per tillable acre for the initial term of the lease, which ran from January 2020 to January 2025. After that, the lease would automatically renew for another five-year term and then yet another, meaning that it would expire in January 2035. For each renewal term, La Belle Dairy agreed to pay rent at the prevailing market rate, which the parties would establish at least four months before the lease renewed; and if they couldn't settle on a new rental

-6-

rate, they would obtain a third-party appraiser to establish one. According to La Belle Dairy, Sharpe instead unilaterally raised the rent, demanded that La Belle Dairy sign an addendum to the lease that changed the parties' respective rights, and then threatened to evict it for not signing the addendum, as the lease directs that the parties "shall execute a signed, written addendum to this Lease setting forth the new Rent for each Renewal Term."

The other provision of the lease that La Belle Dairy claims Sharpe breached deals with the sale of the leased land. It provides that the parties "shall enter into a separate agreement" in which Sharpe would promise to sell to La Belle Dairy "the Leased Premises and all additional acreage surrounding the Leased Premises, consistent with existing parcel legal descriptions and/or tax parcel descriptions, at fair market value over the course of up to five years from the" date the lease commenced. It continued by stating that if the parties couldn't agree on the fair market value of the land, they would "obtain a third party appraiser to establish fair market value." La Belle Dairy alleges that Sharpe sold it some of the land but then refused to sell it the rest.

At first glance, there might appear to be a disconnect between La Belle Dairy's claims for breach of contract and its request for preliminary relief preventing Sharpe from evicting it from the land or selling the land to others. It is hardly impossible that a tenant could succeed on claims of breach of contract and recover damages while the landlord could simultaneously have a right to evict the tenant or sell the land to others. So it seems that to succeed La Belle Dairy has to demonstrate that there's a probability that it is entitled to continued possession of the leased land.

One way that La Belle Dairy can demonstrate it is entitled to continued possession of the premises is to show that the lease obligated Sharpe to sell it the forage land, and yet Sharpe hasn't done so. We believe it has a fair chance of prevailing on this ground. The lease provides that the parties "shall enter into a

-7-

separate agreement" in which Sharpe "shall sell to" La Belle Dairy "the Leased Premises and all additional acreage surrounding the Leased Premises . . . at fair market value over the course of up to five years from" January 1, 2020. But by the time La Belle Dairy filed its complaint on January 24, 2025, Sharpe had not sold all of the relevant land and had announced an intention not to sell any more.

According to the complaint and to a declaration submitted by Deric DuQuaine, general counsel to La Belle Dairy's parent company, the parties intended to complete the sale of the land through a series of five annual transactions of roughly equal acreage at the fair market price as measured at the time of each transaction. For the first of these transactions, the complaint and declaration continue, the parties negotiated for months until they eventually reached an agreement in November 2021. Both the complaint and DuQuaine further state that the parties intended the first agreement to serve as a kind of template for the succeeding ones. When the parties later closed the deal, Sharpe transferred nearly 1,400 acres of land to La Belle Dairy.

The complaint and DuQuaine say in addition that, with respect to the second land sale, the parties began negotiating in January 2022 and agreed that they would close the sale by the following January. But, they continued, the Sharpe corporation was in the process of transferring the land to the Sharpe foundation and needed additional time. According to the complaint and DuQuaine, by September 2022 the parties had identified the land to be transferred in the second land sale but couldn't agree on a purchase price, so La Belle Dairy broached the idea of obtaining an appraiser as the lease directs.

The complaint and DuQuaine further aver that Sharpe then fell silent for a few months, and so when a number of informal emails to his point of contact at Sharpe didn't trigger a response, DuQuaine sent a letter to representatives of Sharpe named Laurie Sharpe and David Melton, the president of the Sharpe foundation. DuQuaine says that Sharpe then resumed communications and indicated that it intended to

-8-

proceed with the transaction but was in no hurry to close. The complaint alleges that a few months later, Sharpe informed La Belle Dairy that it had received another offer for the forage land, and so La Belle Dairy revised its purchase offer. But the complaint and DuQuaine maintain that Sharpe announced that it wouldn't go forward with the second land transaction and refused to sell any more land to La Belle Dairy.

Sharpe contends that the land-sale provision of the lease is an agreement to agree that is unenforceable because it was not specific enough with respect to price or the land to be sold. Missouri substantive law applies in this diversity-of-citizenship case, *see S&H Farm Supply, Inc. v. Bad Boy, Inc.*, 25 F.4th 541, 547 (8th Cir. 2022), and under that law a mere agreement to agree in the future "is a contradiction in terms and imposes no obligation on the parties." *See Jenks v. Jenks*, 385 S.W.2d 370, 376 (Mo. Ct. App. 1964).

We deal first with Sharpe's contention about the price term. It is true that "[c]ontracts which leave price to future determination are routinely found unenforceable as either agreements to agree or illusory promises." *See Green St. 2900 Invs., LLC v. St. Louis Woodworks, Inc.*, 654 S.W.3d 380, 389 (Mo. Ct. App. 2022). But that doesn't mean an amount has to be specified "in dollars and cents." *See Sedmak v. Charlie's Chevrolet, Inc.*, 622 S.W.2d 694, 697 (Mo. Ct. App. 1981). "As long as the parties agreed to a method by which the price was to be determined and as long as the price could be ascertained at the time of performance, the price requirement for a valid and enforceable contract" is satisfied. *See id.*

Here, the parties provided a method to ascertain a price: They agreed to a price representing the fair market value of the land as established by a third-party appraiser. Sharpe contends that this provision isn't sufficiently definite, as it doesn't explain how the parties are to select an appraiser or the valuation method the appraiser ought to use. Missouri courts, however, have found similar lease provisions sufficiently definite to be enforceable. *See Powell v. Kennedy*, 463 S.W.2d 802, 807–08 (Mo.

-9-

banc 1971); *see also Green St.*, 654 S.W.3d at 389 n.9. To the extent Sharpe believes the result here should be different because the parties contemplated that the land would be transferred over time, we disagree. The ultimate point is that the lease requires Sharpe to transfer the leased premises and all the surrounding acreage within five years, and that five years has elapsed. So we conclude that La Belle Dairy has at least a fair chance of prevailing on this matter.

Sharpe also maintains that the land-sale provision in the lease is unenforceable because it doesn't contain a sufficient description of the land to be sold. Under Missouri law, contracts for the sale of land "must either designate or describe the land with accuracy and certainty or provide a way for the identification of that land to be perfected by parol evidence." *See Land Improvement, Inc. v. Ferguson*, 800 S.W.2d 460, 463 (Mo. Ct. App. 1990). Sharpe faults the lease and the maps depicting the leased premises that are attached to it for not including legal descriptions, addresses, or "any specific coordinates or boundary descriptions." We nonetheless believe La Belle Dairy has a fair chance of prevailing on this point as well. The lease has been in effect for over five years, and before the lease was executed Sharpe itself managed the forage land for La Belle Dairy's benefit. So it seems the parties should have some idea what the leased premises consist of. We note, moreover, that the maps attached to the lease depict particular fields by name and give their particular areas, not to mention that the Sharpe corporation has transferred the forage land to the Sharpe foundation, presumably effecting that transfer using legal descriptions. Given that thousands of acres are involved and that we are only at the outset of the case, we think La Belle Dairy has done enough to show a probability that the leased premises can be sufficiently identified.

But, Sharpe points out, the land-sale provision includes not only the leased premises but also "all additional acreage surrounding" it, which it says is also too indefinite. When we review this seemingly expansive phrase in the context of the rest of the agreement and the parties' history, we are not persuaded. The lease itself says

-10-

that the parties "acknowledge that the Leased Premises are part of larger parcels that in certain instances include wooded areas, marshy areas, and otherwise untillable land" and that the parties "contemplate the sale of all such acreage, not just the Leased Premises." Given that the leased premises consist only of tillable farmland, it makes sense that the parties would contemplate transferring other land within the parcels containing the leased premises that isn't tillable, or else Sharpe could be stuck with the untillable parts of the overall tract, leading to a patchwork of ownership interests and potentially to islands that the parties could not access. According to La Belle Dairy's attorney at the hearing, it was actually Sharpe who requested the "all additional acreage" language in the land-sale provision. This is all by way of saying that there's a fair chance that parol evidence will show that the parties didn't intend this language to be boundless and indefinite but intended it instead to describe a limited number of areas within the overall tract to be conveyed—areas that Sharpe should be familiar with given that it has owned the land for years and previously used it as La Belle Dairy does now.

Sharpe next directs our attention to a section in the lease that obligates La Belle Dairy to give Sharpe written notice of any default and an opportunity to cure it in thirty days. The parties dispute whether La Belle Dairy provided the requisite notice. We yet again believe that La Belle Dairy has a fair chance of prevailing, even assuming that it was still obligated to provide notice once Sharpe announced it wouldn't sell it any more land. DuQuaine sent two letters to Laurie Sharpe and Melton that appear to carry the day on this point for La Belle Dairy. For one thing, the lease directed La Belle Dairy to send formal notices to these very people. For another, both letters alerted Sharpe that it wasn't complying with its obligation under the lease to sell the land. In the first letter, DuQuaine wrote that La Belle Dairy "feel[s] stymied in our efforts to proceed with the" second land transaction. It then recounted the parties' communications regarding that transaction and remarked that it could hardly complete the deal unilaterally. DuQuaine also asked Sharpe to confirm that it intended to comply with its lease obligations and proceed with the transaction.

-11-

In the second letter, DuQuaine informed Sharpe that La Belle Dairy was "disappointed that you have ignored your contractual obligations under the" lease by failing to sell the land to La Belle Dairy. Even though the letters didn't explicitly say that they were meant to serve as the formal notices that the lease contemplated, we conclude that they served that function. And it is undisputed that Sharpe didn't cure the default that La Belle Dairy complained about.

Another way La Belle Dairy could demonstrate it's entitled to continued possession is to show that Sharpe has no right to evict it because it has not breached the lease. Recall that Sharpe says that La Belle Dairy has breached the lease by failing to sign an addendum that included new rental rates for the first renewal term. We think La Belle Dairy has a fair chance of prevailing on this issue as well.

According to the complaint, Sharpe "sought to leverage" the alleged breach of the lease's land-sale provision "by exacting from La Belle significantly increased rent in violation of" the lease. La Belle Dairy alleges that Sharpe proposed that the parties enter into a new lease that called for higher rent payments and fewer rights for La Belle Dairy, and when La Belle Dairy declined, Sharpe threatened to lease the land to someone else.

Melton, on the other hand, submitted a declaration in which he maintained that the parties had agreed on the substance of a new lease only for La Belle Dairy to back out. Attached to Melton's declaration in support of Sharpe's contention that La Belle Dairy breached the lease was correspondence between Melton and DuQuaine in which they discussed the new rental rate and other disputes between the parties. For example, according to one email DuQuaine proposed a particular new rental rate but also highlighted other issues he hoped the parties could address, including the sale of the forage land. While at one point the parties appeared to agree on new rental rates beginning at $290 per acre, it seems that the parties were also contemplating the possibility of entering into a final agreement settling not just the new rental rate but

-12-

the other disputes they had. And even though at a later time DuQuaine arguably approved the substance of a new draft addendum, we think La Belle Dairy has a fair chance of showing that his response wasn't the "unequivocal acceptance" Missouri law requires. *See Permanent Gen. Assurance Co. v. Spooner*, 175 F.4th 893, 896 (8th Cir. 2026). That's because DuQuaine responded by saying "I think" it would work but that in a few days he would offer some proposed changes. And when he responded again not long thereafter, he offered those changes but also said that he was waiting for additional feedback from someone else, suggesting that he wasn't offering final approval on behalf of La Belle Dairy. In sum, at this preliminary stage, La Belle Dairy has advanced at least "fair ground for litigation." *See Sleep No.*, 33 F.4th at 1016–17.

So, for the reasons given, we believe that there's a probability that La Belle Dairy will succeed in showing that it is entitled to continued possession of the leased premises, either because Sharpe should have sold it the land or because it hadn't breached the lease.

Has La Belle Dairy also demonstrated a threat of irreparable harm absent a preliminary injunction? We agree with the district court that this consideration weighs in La Belle Dairy's favor. "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009); *see also Minana v. Monroe*, 467 S.W.3d 901, 907 (Mo. Ct. App. 2015). One well-established situation in which damages can't fully compensate an injured party is when, as here, interests in real property are at stake. *See O'Hagan v. United States*, 86 F.3d 776, 783 (8th Cir. 1996); *see also Barkho v. Ready*, 523 S.W.3d 37, 44–45 (Mo. Ct. App. 2017). This land seems particularly advantageous to La Belle Dairy given its proximity and the use to which it is put.

As part of its argument that La Belle Dairy has not demonstrated it faces a threat of irreparable harm, Sharpe asserts that any harm is speculative since it hasn't

-13-

filed an eviction action or taken other steps to evict La Belle Dairy. To show a threat of irreparable harm, La Belle Dairy must demonstrate that the harm is "of such imminence that there is a clear and present need for equitable relief." *Choreo*, 164 F.4th at 671. The record here reveals that the threatened harm is sufficiently imminent. By the time La Belle Dairy filed its motion for preliminary relief, Sharpe had already purported to terminate the lease and ordered La Belle Dairy off the leased premises, stating that if it didn't leave in thirty days, Sharpe would "have no choice but to file a petition for eviction." It was while that clock was ticking that La Belle Dairy moved for injunctive relief, and the court entered its order only a week or so before the clock ran out. La Belle Dairy was entitled to take Sharpe at its word that an eviction action was imminent.

We ask next whether the harm Sharpe would suffer from a preliminary injunction outweighs the irreparable harm that La Belle Dairy would face without one. As the district court did, we conclude that the harm to Sharpe is minimal. Sharpe had already committed to leasing the premises to La Belle Dairy until at least 2035. And it's evidently uncontested that La Belle Dairy is paying Sharpe rent at $290 per tillable acre—the amount Sharpe says the parties agreed to—under protest. So we think this consideration weighs in La Belle Dairy's favor as well.

Finally, it appears to us that the injunction's effect on the public is minimal, though it's possible that the district court was correct in holding that the public interest is better served by ensuring that La Belle Dairy can comply with its nutrient management plan. But even if this consideration doesn't favor La Belle Dairy, we see no reason to think it favors Sharpe. Based on the other considerations we have already discussed, we conclude that the district court acted well within its discretion when it entered the preliminary injunction.

Affirmed.

_____

-14-